UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEBRA SWAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:12-cv-00107-RLY-DKL |
| | ) | |
| COVIDIEN, INC., | ) | |
| TYCO HEALTHCARE GROUP, LP, and | ) | |
| DR. CHRISTOPHER TOULOUKIAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT TOULOUKIAN'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff, Debra Swain, filed suit against Defendants, Covidien, Inc., Tyco Healthcare Group, LP, and Dr. Christopher Touloukian, M.D., for damages sustained as a result of a medical procedure. The case was removed from state court based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. Dr. Touloukian now moves for summary judgment on the claim asserted against him. For the reasons set forth below, the motion for summary judgment is **GRANTED**.

I.  Background

Swain suffered from perforated sigmoid colon diverticulitis. On December 24, 2009, she underwent surgery to have part of her colon resected. Dr. Touloukian, Swain's surgeon, successfully completed the resection, but when he attempted to anastomose (i.e.

1

connect the two resultant ends) the colon with a DST Series EEA 28mm Stapler ("the stapler"), the surgery went terribly wrong.

The stapler used on Swain is no ordinary desk stapler. It consists of two principal parts—the main stapling device and the anvil. In very simple terms, the anvil enters the bowel from the abdominal cavity and is placed in the proximal end of the bowel. The stapler is passed through the rectum to the stump of the sigmoid colon, at which point a protruding part of the stapler punctures the end of the stump and then meets with the anvil. With some finesse and the use of various sutures and clamps, the surgeon then connects the anvil and stapler to bring the two ends of the colon together. Once the anvil and stapler are engaged, the instrument is ready to fire, anastomosing the two ends of the colon. After the stapler fires, it should release from the tissue upon two counterclockwise motions, allowing the surgeon to safely slide the stapler out of the rectum.

Dr. Touloukian reported that he had successfully engaged and fired the stapler, but that the stapler failed to release from the tissue. For approximately 20 or 30 minutes, Dr. Touloukian employed various maneuvers to release the stapler. During this process, Swain's rectal stump tore, resulting in a significant amount of feces spilling into her abdomen. Due to the tear and fecal contamination, Dr. Touloukian decided to abort the anastomosis and instead perform a colostomy.

Swain argues that Dr. Touloukian failed to exercise the "applicable standards of care" while treating her and thus caused her significant harm. A unanimous Medical Review Panel found otherwise, stating that "[t]he evidence does not support the conclusion that the Defendant failed to meet the appropriate standard of care as charged

2

in the complaint and the conduct complained of was not a factor of the resultant damages." (Filing No. 48-1).

**I.      Standard**

Under the *Erie* doctrine, federal courts exercising diversity jurisdiction apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996). Therefore, the court applies the federal standard for summary judgment and Indiana substantive law with respect to the medical malpractice claim.[1] *Id.*

Summary judgment is appropriate when a movant shows that no genuine dispute as to any material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden rests with the movant to demonstrate an absence of evidence to support the nonmoving party's case. *Higgins v. Koch Development Corp.*, 997 F. Supp. 2d 924, 927 (S.D. Ind. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 313, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Once the movant meets this burden, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence that establishes the existence of a genuine dispute of material fact. *Id.* at 928. The court construes the evidence and all inferences reasonably drawn therefrom in the light most favorable to the nonmoving party. *Washington v. Haupert*, 481 F.3d 543, 547

---

[1]     Dr. Touloukian, through counsel, claims to bring this motion pursuant to Trial Rule 56(C) of the Indiana Rules of Trial Procedure. (Filing No. 46). The court considers this an oversight and will presume that the Defendant understands that a motion for summary judgment in this court must be filed pursuant to Federal Rule of Civil Procedure 56.

(7th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## II.     Analysis

In a case such as this, where the doctor charged with malpractice receives a certified Opinion of a Medical Review Panel finding that the evidence does not support the conclusion that the physician failed to exercise the appropriate standard of care, the plaintiff must generally present expert testimony to demonstrate the existence of a genuine issue of fact.[2] *Ziobron v. Squires*, 907 N.E.2d 118, 122 (Ind. Ct. App. 2008); *see also Syfu v. Quinn*, 826 N.E.2d 699, 704 (Ind. Ct. App. 2005) (stating that a unanimous opinion of a medical review panel finding no breach of the applicable standard of care is generally sufficient to negate the existence of a genuine issue of fact). In support of the motion, Dr. Touloukian argues that Swain's failure to present expert testimony on the applicable standard of care, breach of that standard, or proximate cause entitles him to summary judgment. (Filing No. 47 at 2). Swain counters that she need not present expert testimony because her case falls within the *res ipsa loquitur* exception. (Filing No. 64 at 1–3).

A medical malpractice plaintiff must ordinarily "present expert opinion that a defendant health care provider's conduct fell below the applicable standard of care,"

---

[2]     Although this rule sounds in procedure, because it is not inconsistent with Rule 56 and is specific to Indiana's common law of medical malpractice, it governs a tort case that is in federal court via diversity jurisdiction. *See Gipson v. United States*, 631 F.3d 448, 451 (7th Cir. 2011) (finding that Indiana law should apply in a medical malpractice case where the plaintiff sued under the Federal Tort Claims Act because the case reached federal court solely because of the defendant's identity).

4

unless *res ipsa loquitur* applies. *Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008). This doctrine permits the trier of fact to infer negligence where:

> (1) the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants, and (2) the accident is such as in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care.

*Syfu*, 826 N.E.2d at 704 (citation omitted). *Res ipsa loquitur* applies when a jury does not require extensive technical or scientific input to understand that the medical provider's conduct failed to meet the applicable standard of care. *Id.* at 705.

A case illustrating this point is *Cleary v. Manning*, where the plaintiff suffered burn injuries during surgery when a spark from an electrocautery unit ignited the oxygen flowing to his nose. 884 N.E.2d 335, 336–37 (Ind. Ct. App. 2008). The Court held that the plaintiff did not need to present expert testimony to establish a genuine issue of fact—despite a review panel's opinion that the surgeon had met the standard of care—because the careless use of such a device near an oxygen tube is not beyond the understanding of a lay person. *Id.* at 340; *see, e.g.*, *Wright v. Carter*, 622 N.E.2d 170, 171–72 (Ind. 1993) (agreeing that leaving surgical wire in a patient's breast gives rise to an inference of negligence); *Stumph v. Foster*, 524 N.E.2d 812, 816 (Ind. Ct. App. 1988) (holding that expert testimony was not required to survive summary judgment because a lay person could infer that a careful chiropractor would not have broken the plaintiff's rib while manipulating her spine).

Swain argues that a jury could rely upon common knowledge to infer negligence because Dr. Touloukian had exclusive control of the stapler and this type of accident

5

would not ordinarily occur had Dr. Touloukian used proper care. (Filing No. 64 at 1–2). The court disagrees. Swain relies on Dr. Touloukian's deposition testimony, which is the entirety of her designated evidence. Dr. Touloukian testified that he did not know for certain if the stapler misfired or malfunctioned and that "[t]here's no evidence that that's the case." (*Id.* at 2). He further testified that he had never before heard of such a device misfiring. (*Id.*).

From this testimony, Swain seems to advance a false deduction in that, because Dr. Touloukian has no evidence or knowledge of such an instrument malfunctioning, a jury need only use common knowledge to assess the issue of negligence. However, an inquiry into whether Dr. Touloukian operated the stapler with proper care demands more of a jury than mere common knowledge. *Compare Syfu*, 826 N.E.2d at 705 (finding that the act of and medical reasons for elevating a patient's head during prolonged surgery to alleviate facial pressure are matters not within the realm of "common knowledge"), *and Ziobron*, 907 N.E.2d at 126 (concluding that whether a surgeon failed to exercise proper care while conducting an internal bladder sling procedure required expert testimony), *with Gold v. Ishak*, 720 N.E.2d 1175, 1183–84 (Ind. Ct. App. 1999) (noting that the common knowledge exception applied when surgeons used a spark-generating instrument near the patient's oxygen tube), *and Burke v. Capello*, 520 N.E.2d 439, 441 (Ind. 1988) (holding that no expert testimony was needed to survive summary judgment when the surgeon failed to remove pieces of cement from the wound following a hip replacement), *overruled on other grounds by*, *Vergara v. Doan*, 593 N.E.2d 185 (Ind. 1992).

6

As both Swain and Dr. Touloukian contend, the EEA 28mm stapler—a sophisticated medical instrument—failed to properly release from Swain's tissue. (*See* Filing No. 49 at 2–5; Filing No. 63-1 at 13). While Dr. Touloukian maneuvered the stapler for approximately 20 to 30 minutes, the tissue eventually tore. (Filing No. 63-1 at 13–14). Swain only circularly argues that this type of accident would not occur absent a failure to exercise proper care. (Filing No. 64 at 3). She makes no showing, however, that Dr. Touloukian's "conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach of the applicable standard of care." *Ziobron*, 907 N.E.2d at 123. Because the facts do not reflect the type of conduct that falls within *res ipsa loquitur*, Swain cannot circumvent the requirement that a medical malpractice plaintiff present expert testimony. Therefore, Swain's failure to demonstrate the existence of a genuine issue of fact through expert testimony entitles Dr. Touloukian to summary judgment.

## II. Conclusion

For the reasons set forth above, the court **GRANTS** Dr. Touloukian's Motion for Summary Judgment (Filing No. 46).

**SO ORDERED** this 10th day of December 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.